IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| UNIVERSITY GENERAL | § | **Case No. 15-31086** |
| HEALTH SYSTEM, INC., et al., | § | |
| | § | **Jointly Administered** |
| Debtors. | § | |
| | § | |
| UNIVERSITY GENERAL | § | |
| HEALTH SYSTEM, INC., et al., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | **Adv. Pro. No. 15-_____** |
| vs. | § | |
| | § | |
| SYSINFORMATION HEALTHCARE | § | |
| SERVICES, LLC d/b/a | § | |
| EQUALIZERCM SERVICES | § | |

**ORIGINAL COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING
ORDER, AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION**

University General Health System, Inc. ("UGHS"), UGHS Autimis Billing, Inc., UGHS Autimis Coding, UGHS ER Services, Inc., UGHS Hospitals, Inc., UGHS Management Services, Inc., UGHS Support Services, Inc., University General Hospital, LP**,** and University Hospital Systems, LLP, the debtors and debtors-in-possession in the above-referenced, jointly administered chapter 11 case, file this Original Complaint, Application for Temporary Restraining Order and Request for Preliminary and Permanent Injunction (the "Complaint") against SysInformation Healthcare Services, LLC d/b/a EqualizeRCM Services ("Equalize").

**Parties**

1.  The Debtors may be served through undersigned counsel.

2.  Equalize is Texas limited liability company.  It may be served through its registered agent, Nagi Rao, 3267 Bee Caves Rd., Suite 107-511, Austin, TX 78746.  A courtesy

1

copy of this Complaint will be served on Equalize's counsel of record in the main bankruptcy case, James Landon, Streusand, Landon & Ozburn, LLP, 811 Barton Springs Rd., Ste. 811, Austin, Texas 78704.

## Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). The Debtors consent to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## Summary of Complaint

5. UGHS engaged Equalize prior to the Petition Date to handle all of the Debtors' medical coding and billing, as well as accounts receivable management. In June and July 2015, Equalize unilaterally, without notice to the Debtors, (i) diverted substantially all resources previously dedicated to the collection of the Debtors' accounts receivable to other Equalize clients, and (ii) knowingly ceased coding and submitting the Debtors' claims to third-party payors. Equalize's conduct resulted in a multi-million dollar shortfall in collections. This severe liquidity crisis forced the Debtors to obtain $1 million in emergency funding from the Debtors' senior lender. Equalize's actions jeopardized the Debtors' entire enterprise and put its chances of chapter 11 emergence at risk.

6. Due to Equalize's material breaches, the Debtors were forced to reject Equalize's contract and begin handling all coding, billing and collections internally. Equalize has since threatened the Debtors' employees with litigation over an unenforceable non-compete agreement

with the intent to further harm the Debtors by impairing their ability to collect their own accounts receivable.  Accordingly, the Debtors seek a temporary restraining order enjoining Equalize from making any further contact with or sending any other communications to the Debtors' employees.

## Statement of Facts

7. On February 27, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8. Beginning in 2009, the Debtors created the wholly owned subsidiaries UGHS Autimis Billing, Inc. and UGHS Autimis Coding, Inc. (collectively, "Autimis") for the purpose of handling the Debtors' medical coding, billing and collections.  Autimis would later expand to provide these services to third-party healthcare operators.  Autimis also developed proprietary software used in the revenue collection cycle.

9. Autimis continued providing services to the Debtors until late 2014 when the Debtors' Dallas hospital closed and its management resigned.  As of the Petition Date, Autimis had terminated all of its employees and ceased providing billing and collection services to the Debtors or any other party.

10. On December 24, 2014, UGHS entered into that certain Master Services Agreement (the "Agreement") with Equalize.  Pursuant to the terms of the Agreement, Equalize was to be the exclusive provider of billing and collections services to the Debtors.

11. The Agreement requires Equalize to "bill claims in less than 72 hours, post payments in less than 72 hours, and have worked each claim in the accounts receivable and

3

greater than 30 days old at least once (excluding low dollar claims) assuming standard volumes of claims and payments." These timing requirements are critical to maintenance of the Debtors' cash flow cycle.

12. Equalize hired substantially all of the former employees of Autimis in order to provide services to UGHS under the Agreement. Equalize also subleased Autimis' office space and used Autimis' computers, proprietary software, and equipment to provide services to UGHS under the Agreement. Additionally, the Debtors continued to pay for access to the clearing house used by Equalize.

13. During these cases, the Debtors obtained an order assuming and assigning Autimis' third-party contracts to Equalize (Doc. No. 312). The assignment was undertaken at Equalize's request and for its own benefit.

14. The assignment included billing, collection and coding agreements with Lakeway Regional Medical Center and LRMC Physician Services, Inc. (collectively, "Lakeway").

15. Beginning in June 2015, Equalize stopped timely performing under the Agreement. As the Debtors collections were rapidly declining in early July 2015, the Debtors discovered that Equalize had not coded or submitted the Debtors' claims to insurance providers for more than 10 days and had ceased attempting to bill and collect on existing claims. Instead, Equalize prioritized its resources and attention on billing, coding and collecting other client's claims, such as Lakeway, to the detriment of the Debtors' claims. Equalize prioritized Lakeway in order to salvage that business relationship, However, on information and belief, Lakeway has since terminated its agreement with Equalize.

16. During this time, Equalize concealed their actions and intentionally misled the Debtors by providing false performance information regarding Equalize's allocation of resources

to the Debtors' accounts as the Debtors were attempting to understanding the reason for the dramatic decline in Equalize's performance.

17. Equalize's failure to timely submit the Debtors' claims and providing billing and collection services on existing claims severely disrupted the Debtors' cash flow and caused a severe liquidity crisis in July that ultimately jeopardized the entire chapter 11 case. Equalize's breach of contract and the resulting liquidity crisis forced the Debtors to negotiate a $1,000,000 temporary over-advance from MidCap Financial Trust ("MidCap"), its post-petition lender. Barring MidCap's willingness to extend this additional financing, the Debtors cases may have been dismissed or converted. As a condition to loaning this additional amount, the Debtors' lender required an increase in the success fee due upon repayment of the DIP loan and modified reorganization milestones.

18. On August 3, 2015, the Debtors filed a motion to reject the Agreement, which was granted by this Court effective as of August 10, 2015 (Doc. No. 511).

19. After terminating its relationship due to Equalize's material breaches of the Agreement, UGHS determined it would handle all coding, billing and collections internally. The Debtors hired certain of the former Autimis employees, who had later been employed by Equalize, to bill and collect the Debtors' receivables (the "UGH Employees"). The Debtors have continued to use the Autimis proprietary software in their collection efforts. Because Equalize never actually utilized any of its own proprietary software or processes—and instead simply used the systems in place from Autimis, the Debtors could not have possibly used any "trade secrets" of Equalize.

20. On September 11, 2015, Equalize, through its counsel, sent letters to the UGH Employees alleging that their employment by UGHS violated certain employment agreements between Equalize and the UGH Employees.

21. On September 23, 2015, Equalize filed two motions seeking allowance and payment of administrative claims in the Debtors' bankruptcy case (Doc. Nos. 563 and 564). The first motion seeks payment under the terms of the Agreement for the period in dispute (Doc. No. 563). The Debtors contend that their damages for this period greatly exceed any amount that Equalize may be entitled to recover under the Agreement and, because Equalize was in material breach under the Agreement, the Debtors have no liability to Equalize. The second motion alleges that UGHS breached the Agreement by hiring the UGH Employees, who were all former Autimis employees, and by using EqualizeRCM's "trade secrets," which are not identified but appear to be Autimis' proprietary software (Doc. No. 564). These allegations are frivolous.

22. Concurrent with the filing of this Complaint, the Debtors are filing a motion in the main case seeking to consolidate Equalize's two motions for administrative claims with this adversary proceeding.

## Breach of Contract

23. The Debtors incorporate the allegations above as if set forth fully herein.

24. The Agreement was a valid and binding contract.

25. Equalize was obligated to perform under the Agreement until it was rejected effective as of August 10, 2015.

26. Equalize materially breached the Agreement when it ceased coding and submitting the Debtors' claims to third party payors on a timely basis.

27. UGHS performed all of its obligations under the Agreement from the Petition Date through Equalize's material breach.

28. As a result of Equalize's material breach of the Agreement, (i) the Debtors were forced to borrow an additional $1 million to survive an immediate liquidity crisis, which caused MidCap to increase the success fee on the Debtors' DIP loan, modify the Debtors' reorganization milestones under the facility and reduce the Debtors' overall availability, and (ii) the Debtors incurred hundreds of thousands of dollars in additional interest, attorneys' fees and costs—including but not limited to fees and costs of Midcap, the Debtors' counsel and the Official Committee of Unsecured Creditors' (the "Committee") counsel and financial advisors.

29. Additionally, as a result of Equalize's material breach of the Agreement, the Debtors were forced to rehire the UGH Employees to bill and collect the Debtors' accounts receivable. The Debtors continue to incur salary, benefits, and overheard expenses related to the UGH Employees.

30. The Debtors have not yet filed a motion to sell their assets or a plan of reorganization or otherwise confirmed the total number of accounts rendered uncollectible as a result of Equalize's failure to code and collect. As such, the full extent of damages suffered by the Debtors as a result of Equalize's breach of the Agreement has yet to be determined.

### Request for Attorneys' Fees

31. As a result of Equalize's material breach of the Agreement, the Debtors were forced to incur substantial attorneys' fees.

32. The Debtors seek an award of all attorneys' fees incurred by the Debtors as a direct result of Equalize's breach, including but not limited to (i) the additional borrowing from MidCap and related pleadings, (ii) the motion to reject, (iii) responding to motions filed by

Equalize, and (iv) the prosecution of this Complaint. The attorneys' fees requested include amounts incurred by Midcap and the Committee, which have or will be paid by the Debtors as a result of Equalize's conduct.

### Request for Pre- and Post-Judgment Interest

33. The Debtors seek pre-judgment interest on the damages caused by the Defendants at the rate of 5% per annum. The Debtors seek post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

### Tortious Interference

34. The Debtors incorporates the allegations above as if set forth fully herein.

35. The Debtors have contractual or quasi-contractual relationships with third-party payors that are obligated to timely pay on submitted claims.

36. Equalize's ongoing threats against the UGH Employees are willful and intentional acts which Equalize intends to cause the Debtors injury and interfere with their collection of accounts receivable from third-party payors.

37. Equalize has no legal basis to allege that the UGH Employees are in violation of their employment agreements with Equalize.

38. Equalize has no legal basis to claim ownership or trade secret protection of software and other proprietary business information that belong to Autimis.

39. Equalize has no legal basis to claim that the Debtors (or any of their employees) are competing with Equalize by hiring back its former Autimis employees to perform revenue cycle services exclusively for the Debtors.

40. Equalize's targeted threats against the UGH Employees may cause the UGH Employees to resign their employment. Loss of the UGH Employees could cause similar, and

8

more significant, damages to the Debtors that resulted from the liquidity crisis caused by Equalize's material breach of the Agreement.

### Request for Declaratory Relief

41. The Debtors incorporate the allegations above as if set forth fully herein.

42. The Debtors request the Court to enter a judgment declaring that their employment of the UGH Employees does not violate the Agreement or any prior employment agreement between Equalize and the UGH Employees.

43. The Debtors request the Court to enter a judgment declaring that their use of the software and business information developed and owned by Autimis is not a violation of the Agreement.

44. The Debtors request the Court to enter a judgment declaring that Equalize takes nothing on account of its two motions for administrative expense claims.

### Request for Injunctive Relief

45. The Debtors incorporate the allegations above as if set forth fully herein.

46. The Debtors seek a temporary restraining order and preliminary injunction prohibiting Equalize from any further written or oral communication with the UGH Employees.

47. The Fifth Circuit utilizes the traditional four-part standard for determining whether a bankruptcy court should issue an injunction:

(1) a substantial likelihood that the movant will prevail on the merits;
(2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted;
(3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and
(4) that the granting of the injunction will not disserve the public interest.

*In re Zale Corp.,* 62 F.3d 746, 765 (5th Cir. 1995).

48. In the present case, the Debtors meet all four standards.

49. First, there is a substantial likelihood of success on the merits. The non-compete clause in the terminated employment agreement between the UGH Employees and Equalize is not enforceable under Texas law. Even if the Court were to find that the non-compete was enforceable, the Debtors' employment of the UGH Employees does not violate the non-compete. The UGH Employees are employed for the sole purpose of billing and collecting the Debtors' receivables. No services are being rendered to any third party by the UGH Employees and the Agreement with Equalize has been rejected. Therefore, the Debtors are not competing with Equalize.

50. Second, there a substantial threat that the Debtors will suffer irreparable injury if the injunction is not granted. The Debtors have already suffered one liquidity crisis caused by Equalize's breach of the Agreement. While the Debtors were able to survive that crisis in the immediate term through additional loans from Midcap and hiring the UGH Employees, the loss of the UGH Employees due to the fear instilled by Equalize's threats would again cast the Debtors' reorganization efforts into jeopardy.

51. Third, the balance of potential injuries strongly favors issuing the injunction to protect the Debtors. Equalize will suffer no injury if the injunction is granted. The UGH Employees have already quit—on their own volition and without provocation by the Debtors—their employment with Equalize. Further, the Debtors have rejected the Agreement and, upon information and belief, Lakeway terminated its relationship with Equalize. Therefore, the Debtors' employment of the UGH Employees will cause no harm to Equalize. Conversely, if Equalize is permitted to continue threatening the UGH Employees, the UGH Employees may quit and the resulting delay would have devastating effects on the Debtors' cash flow.

52.     Finally, the public interest favors granting an injunction to prevent Equalize from threatening employees with an unenforceable non-compete. *See, e.g., Holeman v. Nat'l Bus. Inst.*, 94 S.W.3d 91 (Tex. App. Houston 14th Dist. 2002)  ("As a general rule, unreasonable restraints of trade, including unreasonable covenants not to compete, contravene public policy."). Moreover, Equalize's conduct in this case has been particularly egregious and has greatly harmed an operating hospital.  Equalize's use of idle threats to advance their own interests at the expense of patients' health and safety should not be tolerated by this Court.

Accordingly, the Debtors request the Court enter the attached restraining order and set a hearing for consideration of the temporary and permanent injunctions, for damages as set forth above, and for other and further relief as is just.

**Dated: September 28, 2015.**

**Respectfully submitted,**

By: /s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl
State Bar No. 24038592
Aaron J. Power
State Bar. No. 24058058
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX  77002
(713) 226-6695
(713) 226-6295 (fax)

**Counsel to University General Health System, Inc.**

5094575v3